No. 65,364

In the Matter of PHILIP D. LUNT, *Respondent*.

(801 P.2d 1327)

Opinion filed December 7, 1990.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*Thomas D. Haney,* of Porter, Fairchild, ·Wachter & Haney, P.A., of Topeka, argued the cause for the respondent.

*Per Curiam:* This original proceeding in discipline was filed by the office of the disciplinary administrator against Philip D. Lunt, of Pratt, an attorney admitted to the practice of law in the State of Kansas. On December 12, 1989, and on May 2, 1990, hearings were held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared by counsel and in person. The facts, as determined by the hearing panel, are not disputed and consist primarily of stipulations by the parties.

The first complaint against respondent involves his actions in handling the Helen M. Kerich Estate, which, in the panel's judgment, is the most serious of the complaints against respondent. The actions of respondent resulted in a malpractice action being filed in the District Court of Pratt County, Kansas. District Court Judge Steven P. Flood found that respondent was guilty of malpractice in the handling of the estate. Respondent's conduct was further found to be wanton, with a reckless indifference to the consequences to his client, and went beyond mere negligence. Judge Flood further found that· respondent: (1) failed to verify probate proceedings; (2) failed to mail notices of probate hearings to appropriate persons; (3) failed to file appropriate probate proceedings, such as orders for hearings; (4) backdated or misfiled many of the probate proceedings; (5) failed to contact an Oklahoma attorney early in the probate proceeding to determine the necessity of ancillary probate proceedings and whether an Oklahoma estate tax return needed to be filed; and (6) misled his clients by telling them that ancillary probate was not necessary

in Oklahoma, that filing an Oklahoma inheritance tax return was not necessary, that filing a federal estate tax return was not necessary, that inventories had been filed when they had not, and that tax clearance letters had been obtained when they had not.

Judge Flood further found that respondent's acts led to actual damages to the estate in interest and penalties for the late filing of the federal estate tax return and Kansas and Oklahoma inheritance tax returns. Federal interest paid was $14,905.05, and an additional $12,000 was still due as of the date of Judge Flood's decision, for a total of $26,905.05. Also, at the time of the filing of his opinion, Judge Flood found that there was a penalty of $8,281.77 due to the Internal Revenue Service for late filing. There are also Kansas inheritance tax penalties of $489.01 for late filing. There was interest of $2,172.46 due for late filing of the Oklahoma inheritance tax return. Judge Flood also found that the estate had incurred additional excessive attorney fees of $6,965.03 over and above that which respondent had charged.

Judgment was entered against the respondent for $55,797.39 in actual damages as a result of respondent's actions in the handling of the Kerich estate. The court also imposed $100,000 in punitive damages against the respondent and awarded J. Patrick Kerich and Michael B. Kerich $50,000 each for emotional distress as a result of respondent's actions.

The parties stipulated as follows:

"The findings of fact in Judge Flood's decision, if found by the panel, pursuant to [Supreme Court Rule] 202 [1990 Kan. Ct. R. Annot. 136], to be evidence of the findings therein, show that the Respondent violated the following disciplinary rules: DR 1-102(A)(4), (5), and (6) [1990 Kan. Ct. R. Annot. 165], DR 6-101(A)(1) and (3) [1990 Kan. Ct. R. Annot. 188], and DR 7-101(A)(1), (2), and (3) [1990 Kan. Ct. R. Annot. 193]."

These findings by Judge Flood were adopted by the panel, and it found that all the above-mentioned disciplinary rules were violated by the respondent. The panel further found that there was no malice on the part of the respondent and that respondent definitely did not take any property of the estate or convert any of it to his own use.

As to the second complaint against the respondent, the panel made the following findings, based upon the stipulation of the parties:

1. The complainant, Kathy Saloga-Hall, retained respondent to represent her regarding a refusal by her insurance company to pay for medical expenses she had incurred as a result of an operation.

2. Approximately one year after respondent had been retained, he filed a lawsuit on behalf of complainant against the insurance company. (*Saloga-Hall v. Life Ins. Co. of the Southwest*, Case No. 85-C-85, filed July 9, 1985.)

3. On July 30, 1985, an answer was filed to respondent's petition. Robert Schmisseur, attorney for defendant insurance company, prepared interrogatories and requests for admissions. Respondent did not respond to either of these documents. On November 15, 1985, Schmisseur filed a motion for summary judgment. Respondent did not file any response to the motion for summary judgment; subsequently, respondent agreed to an order of dismissal of complainant's case with prejudice. No offer of settlement was ever made by the Life Insurance Company of the Southwest during the pendency of the civil case.

4. In late 1985 or early 1986, respondent told complainant that she had won her case and that her medical care providers would be paid as soon as checks were received from the insurance carrier.

5. Approximately three or four months after complainant was told she had won her lawsuit, she began receiving bills from her medical care providers. Complainant contacted respondent, who told her that the checks to pay the medical care providers were in town and that he would pick them up at the offices of the insurance company's attorney.

6. Complainant contacted the insurance company's attorney and was told that her case had been dismissed. At this point, complainant contacted attorney Steve Brown to represent her. Complainant called respondent from Brown's office and was again advised by respondent that he would pick up the draft from the insurance company's attorney.

7. Respondent dismissed complainant's lawsuit without consulting complainant. On three occasions, respondent misrepresented the status of complainant's lawsuit to complainant.

8. On April 26, 1986, respondent sent a check in the amount of $1,128; drawn on the Philip D. Lunt Trust Account, to the

Credit Bureau of Wichita for payment to one of complainant's medical providers, the Hertzler Clinic. The check reflected that attorney fees and court costs had been deducted. When the credit bureau objected to the reduced amount, respondent sent an additional check for $698.44 to the credit bureau.

The panel further found that respondent paid the Credit Bureau of Wichita $1,826.44 from the Philip D. Lunt Trust Account and that no funds were ever present in that trust account with which respondent could legitimately pay the credit bureau. The panel also found, however, that these funds did not belong to other clients of respondent. The panel further found, from evidence introduced at the hearing and from respondent's stipulation, that respondent violated DR 1-102(A) (4) and (6); DR 6-101(A)(1) and (3); and DR 9-102(A) (1990 Kan. Ct. R. Annot. 204).

As to the final complaint against respondent, the panel found, again based upon the parties'· stipulation, as follows:

1. In late 1983, respondent represented Jolene G. Tillotson in a workers compensation matter and, as a result of his representation in that case and in a bankruptcy matter, a civil lawsuit was filed against respondent on September 29, 1986. (*Tillotson v. Lunt*, Pratt County District Court Case No. 86-C-131.)

2. In connection with the lawsuit, respondent entered into a settlement agreement wherein respondent agreed that, if a trial had been held, he would have been found to have

"intentionally and fraudulently misrepresented to plaintiffs that a settlement of Jolene Tillotson's Worker's Compensation case was imminent knowing full well he had negligently allowed the Statute of Limitations to run. That if a trial of the matter were held that he failed to disclose to plaintiffs that he was paying temporary disability and physician bills rather than the Worker's Compensation Carrier. That at all times he was acting as their attorney in this matter."

3. Respondent made the payments of temporary disability to Mrs. Tillotson from his attorney trust account at a time when no monies had been received by respondent on behalf of Mrs. Tillotson. The panel pointed out that it appears that these funds were not funds of other clients, but that they were respondent's own funds.

4. Pursuant to a stipulation entered into by respondent in *Tillotson v. Lunt*, respondent agreed to pay the Tillotsons $50,000

plus interest from the date of the agreement, which was December 31, 1986. Commencing on May 1, 1987, respondent was to pay $660 per month for 36 months and various lump sum payments. As of July 2, 1990, respondent had paid $2,100 on the judgment.

5. The panel found, from evidence introduced at the hearing and from respondent's stipulation, that his conduct set forth above violates DR 1-102(A)(4) and (6); DR 6-101(A)(1) and (3); DR 7-101(A)(1), (2), and (3); and DR 9-102(A).

Respondent admits the violations of the disciplinary rules as charged but offered substantial evidence in mitigation. Dr. Robert Schulman, a psychiatrist, testified that respondent, during the time in question and at the present time, suffers from an obsessive-compulsive personality disorder. The doctor made it clear that this is not a psychosis or schizophrenia or a mental disorder but, rather, a "lifestyle if you will." Dr. Schulman felt that respondent could work as a governmental or corporate counsel, but that he could not handle a solo or even a general practice.

Respondent has been on disability status since 1987 and has not been practicing law. He was at the Menninger Foundation for treatment for some period of time commencing May 9, 1987.

The panel, after considering the evidence and the mitigating factors set out in § 9.32 of the American Bar Association Standards For Imposing Lawyer Sanctions (1986), unanimously recommended that the respondent be suspended for a period of two years in accordance with Supreme Court Rule 203 (1990 Kan. Ct. R. Annot. 137). Respondent did not file exceptions to the panel's report, but he did file a Statement in Mitigation of Punishment with the court.

After a careful review of the record and taking into consideration the mitigating circumstances, this court is of the opinion that the respondent should be suspended from the practice of law for a period of one year.

IT IS THEREFORE ORDERED that Philip D. Lunt be and he is hereby suspended from the practice of law in the State of Kansas for a period of one year from the date of this opinion.

IT IS FURTHER ORDERED that respondent shall complete 20

hours of approved CLE and comply with the provisions of Supreme Court Rule 218(a) (1990 Kan. Ct. R. Annot. 155). At the end of the one-year suspension, respondent will be reinstated upon furnishing proof of compliance thereof to the Clerk of the Appellate Courts.

IT IS FURTHER ORDERED that respondent pay the costs of these proceedings and that this order be published in the official Kansas Reports.